**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SOUTH VALLEY HEALTH CARE
CENTER,

> Petitioner,

v.

HEALTH CARE FINANCING
ADMINISTRATION,

> Respondent.

No. 99-9535

---

**ON PETITION FOR REVIEW FROM AN ORDER
BY THE SECRETARY OF THE DEPARTMENT
OF HEALTH AND HUMAN SERVICES
(No. A-98-64)**

---

Submitted on the briefs:

David M. Shell of the Law Offices of David M. Shell, Elk Grove, California, for
Petitioner.

Jay A. Swope, Chief Counsel, Region VIII, Patricia L. Bossert, Special Attorney
for the Department of Justice and Assistant Regional Counsel, Department of
Health and Human Services, Denver, Colorado, for Respondent.

---

Before **BRORBY, PORFILIO,** and **MURPHY** , Circuit Judges.

---

**BRORBY** , Circuit Judge.

South Valley Health Care Center (South Valley) appeals from a final decision of the Secretary of the Department of Health and Human Services (the Secretary) affirming a civil money penalty against South Valley. The penalty was levied by the Health Care Financing Administration (Administration) pursuant to 42 U.S.C. § 1395i-3(h)(2)(B)(ii) for South Valley's noncompliance with the conditions of a skilled nursing facility's participation in a Medicare program. Our jurisdiction arises under 42 U.S.C. § 1320a-7a(e), and we affirm. [1]

## I. Procedural background and standards of review

To participate as a skilled nursing facility in the Medicare program, the facility must submit to random surveys conducted by state departments of health on behalf of the Administration to ensure that it is meeting the program requirements. *See* 42 C.F.R. § 488.305. After conducting a survey, the state certifies the compliance or noncompliance of the facility, subject to the approval of the Administration. *See* 42 C.F.R. § 488.330. A certification of noncompliance reports deficiencies and recommends various remedies, including

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

civil money penalties. Factors to be considered in selecting remedies include the seriousness of the deficiencies, whether they constitute a pattern of behavior, the relationship of the deficiencies to one another, and the facility's history of noncompliance. *See* 42 C.F.R. § 488.404. The selection of remedies is further limited by 42 C.F.R. § 488.408, which mandates application of certain remedies and leaves others to the discretion of the Administration. Under this section, the Administration has discretion to impose civil money penalties of $50-$3,000 per day for any deficiency that is widespread and has potential for causing more than minimal harm or that results in actual harm if the facility is not in substantial compliance with the regulations. *See* § 488.408(d)(2). The Administration's discretion in regard to the amount of penalty to be imposed is further guided by factors set forth in 42 C.F.R. § 488.438(b).

The facility may contest imposition of the civil money penalty in a formal evidentiary hearing before an administrative law judge (ALJ), *see* 42 C.F.R. § 498.40, who may reduce but not set aside the penalty, and whose consideration of penalty amount is limited to the same factors considered by the Administration, *see* § 488.438(e). The ALJ may not review the exercise of discretion by the Administration in deciding to impose a civil money penalty. *See id.* The "HCFA's determination as to the level of noncompliance of [a skilled nursing

-3-

facility] . . . must be upheld [by the ALJ] unless it is clearly erroneous."
42 C.F.R. § 498.60(c)(2).

The decision of the ALJ, in turn, is subject upon request to review by the Departmental Appeals Board (Board).     *See* 42 C.F.R. § 498.80.  The Board may either adopt, modify, or reject the ALJ's decision, based upon the evidence in the record.   *See* 42 C.F.R. § 498.88.  This decision becomes the Secretary's final decision and may be appealed directly to the United States Courts of Appeal.     *See* 42 C.F.R. § 498.90(a)(1).

On review in this court, the Secretary's findings of fact, "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 42 U.S.C. § 1320a-7a(e).  We give substantial deference to an agency's interpretation and application of its own regulations.     *See Colorado Dep't of Social Servs. v. United States Dep't of Health & Human Servs.*     , 29 F.3d 519, 522 (10th Cir. 1994).  Further, a decision within the agency's discretion is "entitled to a presumption of regularity."    *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision* , 934 F.2d 1127, 1141 (10th Cir. 1991).  When reviewing the legal propriety of a civil money penalty, we have the power to affirm, modify, set aside, or remand the order.   *See* § 1320a-7a(e).

## II. Factual background

The factual predicate on appeal is undisputed. South Valley was surveyed on February 29, 1996, by the Utah Department of Health and found to have fifteen substantial deficiencies, including failure to comply with 42 C.F.R. § 483.25(c), which sets forth the standards for prevention and treatment of pressure sores. Specifically, at the time of the survey, three residents had pressure sores that were determined to be avoidable. The State warned South Valley that if the deficiencies were not corrected by May 29, 1996, it would recommend imposition of a civil money penalty of $2720 per day, a directed plan of correction, and termination of its Medicare agreement. On June 10, 1996, the State again surveyed South Valley and found that, although it had corrected other deficiencies, it was still substantially noncompliant with the pressure sore quality of care requirements. According to the second survey, an additional patient had developed a new, avoidable pressure sore, and South Valley still had not implemented a skin assessment/wound care team that was part of its plan of compliance intended to prevent such developments. After notification, the Administration imposed a penalty of $1300/day to be effective February 29, 1996, along with other remedies. In a subsequent survey, the State determined that South Valley was in substantial compliance with the pressure sore requirements on June 24, 1996. The Administration thus limited its penalty to a time period of

February 29 through June 24, 1996, for a total of $150,800.  South Valley administratively appealed the penalty.

In a detailed and well-documented decision, the ALJ found that (1) South Valley was not in substantial compliance with 42 C.F.R. § 483.25(c) on February 29, 1996; (2) it did not fully implement its plan of correction or come into substantial compliance with the regulation as of May 20, 1996, as evidenced by (a) its failure to correct a systemic pressure sore care and documentation problem, (b) its failure to conduct satisfactory inservice training for skin care and wound prevention, (c) its failure to establish a functioning wound care team, (d) its failure to conduct or monitor its skin check program until May 20, 1996, and (e) the fact that a resident developed a new pressure sore between the initial survey and the revisit; (3) the pressure sore developed after February 29 was avoidable but occurred because South Valley did not provide the necessary services to promote healing and prevent infection; (4) South Valley's failure to change the resident's position in bed on an hourly basis did not contribute to the development of the pressure sore; (5) the ALJ would not disturb the Administration's finding that South Valley was in substantial compliance with the pressure wound regulation by June 24, 1996; (6) the penalty of $1,300/day was not reasonable; and (7) a penalty in the amount of $400/day was reasonable. Neither South Valley nor the Administration objected to findings numbered (1),

-6-

(2)(a)-(d), (4), or (5). After appeal to the Board, the Board adopted all the ALJ's findings except for number (6), and it modified finding number (7) to reinstate the penalty of $1,300/day.

## III. Analysis

South Valley raises seven issues on appeal to this court. Five are challenges to the sufficiency of the evidence; two allege legal error. For substantially the same reasons as stated in the ALJ's March 27, 1998 decision, we conclude that challenged findings numbered (2), (2)(e), and (3) are supported by substantial evidence in the whole record and are therefore conclusive. South Valley asserts that finding number (2) was improperly based on the fact that a single resident developed a single pressure sore, but that claim is belied by unchallenged findings (2)(a)-(d), which establish that South Valley's substantial noncompliance was also based on its widespread program, documentation, and training failures.

South Valley's remaining issues challenge the reasonableness of the $1,300/day penalty. It contends that the Board erred in concluding that the Administration properly based the penalty on the fact that there were numerous deficiencies at the time of the February survey even though all but one of the categories of deficiency had been corrected by June 24, 1996. We disagree. As the Board pointed out, the regulations provide for imposition of penalties from the

first date a skilled nursing facility is determined not to be in substantial compliance with one or more requirements. *See* 42 C.F.R. § 488.430(a); 42 C.F.R. § 488.301 (defining "substantial compliance" as "a level of compliance with the requirements of participation such that any identified deficiencies pose no greater risk to resident health or safety than the potential for causing minimal harm"). The notice letter to South Valley warned that a civil money penalty would be issued for the deficiencies discovered in February if it did not achieve substantial compliance by May 26, 1996. Further, the Administration's reduction in penalty from $2,720/day to $1,300/day reflected the Administration's reasoned consideration that South Valley had corrected most of the deficiencies unrelated to pressure sore treatment. We conclude that the Administration properly considered all deficiencies in determining an appropriate penalty.

We next address South Valley's contention that the penalty must be set aside or modified because the Administration allegedly did not comply with the regulations in determining a reasonable penalty. South Valley's failure to comply with the requirements of § 483.25(c) resulted in actual harm to its residents. Under § 488.408(d)(2)(ii), the Administration was mandated to impose a "Category 2" remedy, which included penalties ranging from $50-$3,000/day. In determining the penalty to be assessed within this range, the Administration was required to consider the facility's history of noncompliance, its financial

condition, and the facility's degree of culpability.    *See* 42 C.F.R. § 488.438(b), (f). "Culpability" includes "neglect, indifference, or disregard for resident care, comfort or safety," but absence of culpability is not a mitigating circumstance for reduction of the penalty. § 488.438(f)(4). The Administration must also consider the seriousness of the deficiencies and whether they are widespread as well.    *See* 488.438(f)(3); § 488.404.

The notice letter informed South Valley that the Administration was imposing the penalty of $1,300/day because of (1) the decrease in the level of substantial noncompliance, (2) the number of residents affected by its noncompliance, and (3) the fact of actual harm. Thus, the letter provided evidence that the Administration considered South Valley's history of noncompliance, the potential widespread effect of its facility-wide noncompliance with skin care assessment and wound treatment requirements, and the seriousness of the actual harm. Contrary to South Valley's assertion, there is no regulation requiring the Administration to compare South Valley's compliance record with that of other skilled nursing facilities.

At the hearing, a representative from the Administration testified that, for isolated deficiencies resulting in actual harm, it had developed a chart that imposed a base fine of $100/day, plus an occupied bed fine of $10/day, plus an individual affected resident fine of $100/day. The occupied bed fine was

intended to take into account a facility's ability to pay, based on the reasonable implication that the more residents a facility has, the more money it is paid by Medicare. Use of the chart to aid the Administration in determining a reasonable civil money penalty did not conflict with the mandates of the regulations. We conclude that the Administration sufficiently guided its discretion with the statutorily-required considerations and that it did not abuse its discretion in imposing a penalty of $1,300/day. The civil money penalty resulted from an appropriate and reasonable exercise of the Secretary's discretion.

The determination of the Secretary is AFFIRMED.