FILED
United States Court of Appeals
Tenth Circuit

April 17, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

COX RETIREMENT PROPERTIES,
INC., d/b/a The Cottage Extended
Care,

   Petitioner,

v.

CHARLES E. JOHNSON,[*] Acting
Secretary of the United States
Department of Health and Human
Services,

   Respondent.

No. 08-9523
(Petition for Review)

**ORDER AND JUDGMENT**[**]

Before **LUCERO**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

[*]  Pursuant to Fed. R. App. P. 43(c)(2), Charles E. Johnson is substituted for
Michael O. Leavitt as the respondent in this appeal.

[**]  After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This is an appeal from a final decision of the Secretary of Health and Human Services (Secretary), affirming a civil money penalty against Cox Retirement Properties, Inc., d/b/a The Cottage Extended Care (the Cottage), for noncompliance with certain Medicare regulations governing skilled-nursing facilities. We have jurisdiction under 42 U.S.C. § 1320a-7a(e), and we affirm.

The Cottage is a skilled-nursing facility in Tulsa, Oklahoma, certified to participate as a provider in both the Medicare and Medicaid programs. As such, the Cottage is required to comply with specific regulations aimed at resident behavior and facility practices. The Secretary, through the Centers for Medicare & Medicaid Services (CMS), is authorized to impose a civil money penalty (CMP) against any facility that fails to achieve substantial compliance with program requirements.[1]

In January 2006, the Oklahoma State Department of Health (OSDH), acting on behalf of CMS, conducted a survey at the Cottage in response to various complaints. CMS found that, from January 12 to February 13, 2006, the Cottage was out of compliance with the following requirements: to develop and implement written policies and procedures that prohibit neglect (42 C.F.R. § 483.13(c)); to consult with each resident's physician when there is a significant

_____

[1] "Substantial compliance" is "a level of compliance with the requirements of participation such that any identified deficiencies pose no greater risk to resident health or safety than the potential for causing minimal harm." 42 C.F.R. § 488.301.

change in the resident's physical, mental, or psychosocial status (42 C.F.R. §483.10(b)(11)(B)); and to provide the necessary care and services for each resident to attain or maintain the highest practicable physical, mental, and psychosocial well-being (42 C.F.R. § 483.25).[2]  In addition to these deficiencies, CMS also determined that, for a twenty-four hour period, a "pattern of deficiencies . . . constitute[d] **immediate jeopardy** to resident health and safety." R. Vol. V at 276.  CMS imposed a CMP of "$3,300.00 per day beginning January 12, 2006 and continuing through January 12, 2006, the period of immediate jeopardy," and also assessed a CMP "of $50.00 per day, beginning January 13, 2006 and continuing until facility achieves substantial compliance." *Id.* at 278.  By February 13, 2006, the Cottage was found to be in substantial compliance.

After participating in informal dispute resolution which resulted in a lessening of the scope and severity of the deficiencies, the Cottage appealed the decision to the Departmental Appeals Board (DAB) and requested resolution by an Administrative Law Judge (ALJ).  The ALJ sustained the finding of substantial noncompliance and the resultant penalties.  The Cottage then sought review by

---

[2]    The Cottage incorrectly argues in its reply brief that, because 42 C.F.R. § 483.25 was not identified in CMS's original survey report, the Secretary "cannot rely upon the regulation to state the facility was not in substantial compliance with 42 C.F.R. 483.13(c)."  Reply Br. at 2.  The Cottage neglects the fact that under 42 C.F.R. § 498.56, the ALJ was authorized to add new issues to the case and, after her review of the record, informed the parties of her intent to do so and heard no objection from either party.  R. Vol. II, tab CR 1629 at 3.

the Appellate Division of the DAB (Appellate Division) which upheld the ALJ's decision and adopted all of her findings of fact and conclusions of law. The Appellate Division's decision is the final decision of the Secretary and is directly appealable to this court. *S. Valley Health Care Ctr. v. Health Care Fin. Admin.*, 223 F.3d 1221, 1223 (10th Cir. 2000) (citing 42 C.F.R. § 498.90(a)(1)). "Because the DAB affirm[ed] and adopt[ed] the ALJ's decision, this court also reviews the ALJ's decision as part of the Secretary's final decision." *Horras v. Leavitt*, 495 F.3d 894, 899 (8th Cir. 2007).

"On review in this court, the Secretary's findings of fact, 'if supported by substantial evidence on the record considered as a whole, shall be conclusive.'" *S. Valley*, 223 F.3d at 1223 (quoting 42 U.S.C. § 1320a-7a(e)). "Our review is also governed by 5 U.S.C. § 706. Under § 706(2), we may set aside agency conclusions if they are [among other things] . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [.]" *St. Anthony Hosp. v. U.S. Dep't of Health and Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002) (citing 5 U.S.C. § 706(2)(A)). "When reviewing the legal propriety of a civil money penalty, we have the power to affirm, modify, set aside, or remand the order." *S. Valley*, 223 F.3d at 1223 (citing 42 U.S.C. § 1320a-7a(e)). Finally, "[w]e give substantial deference to an agency's interpretation and application of its own regulations." *Id.*

The Cottage argues that the Secretary's deficiency findings are not supported by substantial evidence; that its deficiencies did not pose "immediate jeopardy" to residents on January 12, 2006; and that the Secretary improperly assessed and calculated the CMP as a matter of law.

**Deficiency findings.**

The facts leading to the determination of the deficiencies concern the treatment of Resident #7 after she had a seizure on January 2, 2006, and a second seizure on January 4, 2006. Resident #7, a fifty-four year old woman, had been admitted in November 2005 with multiple diagnoses and a history that included end-stage diabetes mellitus, depression, stroke, congestive heart failure, renal insufficiency, and hypothyroidism. Resident #7 was under hospice care. Among other things, the Resident's care plan directed the staff to watch carefully for complications due to the hypertension, including monitoring of blood pressure, shortness of breath, drowsiness, confusion, numbness or tingling. The Resident's physician was to be notified of any signs or symptoms of hypertension crisis. Similar monitoring requirements, including watching for signs of changes in cognitive or functional levels, were in place because the Resident was also at risk for another stroke. Again, the staff was to report to the physician any signs or symptoms of repeat stroke.

The first seizure, witnessed by staff, occurred on January 2, 2006, at 11:30 am. In response, the staff made one phone call to the on-call physician, but

received no response.  Nothing further was done to contact the physician.  At 12:05 pm, staff contacted hospice.  Other than a visit on January 3 from hospice to treat the Resident's necrotic big toe, no other action, not even routine monitoring apparently, was recorded as having been taken on behalf of the Resident for the next two days.

On January 4, 2006, at 4:30 pm, staff observed the Resident again exhibiting seizure-like activity.  The on-call doctor was not notified until 7:00 pm; the Resident was sent to a hospital at 9:30 pm.  In the emergency room, the Resident was diagnosed with a stroke and a seizure "probably secondary" to the stroke.  R. Vol. VI at 496.

The OSDH surveyors were at the Cottage on January 9, 11, and 12, 2006. They issued their statement of deficiencies on January 18, 2006.  Contrary to the conclusions of both the ALJ and the Appellate Division, the Cottage argues that the finding of deficiencies was unsupported by substantial evidence.  The sum of the Cottage's argument, however, is the conclusory statement that no evidence supports either the finding of noncompliance from January 13, 2006, through February 13, 2006, or the finding of immediate jeopardy for January 12, 2006. The Cottage points to no evidence in the record to contradict that relied upon by the Secretary.  Instead, the Cottage asserts that "[t]hese are arbitrary dates and the record holds no significance for those dates as to immediate jeopardy or noncompliance."  Opening Br. at  11.

Initially we note that, in analyzing the deficiency issue in general, the ALJ thoroughly reviewed the evidence we have summarized above, including evidence regarding Resident # 7's history and diagnoses upon admission to the Cottage, her treatment plan, the facts surrounding the two seizures and staff's response to them, and hospital records upon arrival at the emergency room. The ALJ also summarized the documents maintained by the Cottage relative to staff treatment of residents. The Appellate Division similarly meticulously reviewed the evidence and affirmed the ALJ's findings of fact and conclusions of law. Our review of the record as a whole reveals substantial evidence to support the Secretary's findings regarding the existence of the cited deficiencies.

The first regulation addressed by the ALJ, 42 C.F.R. § 483.13(c), addresses staff treatment of residents and requires that written policies and procedures must be implemented to prohibit neglect and abuse of patients. Although the Cottage was not charged with neglect per se in its treatment of Resident #7, after reviewing the evidence described above, the ALJ found that "on January 2 and 4, 2006, the facility did not provide R[esident] 7 with services necessary to avoid physical harm, and therefore neglected her." R. Vol. II, tab CR1629 at 8. The Cottage does not dispute this finding.

Section 483.13(c) "addresses adopting effective anti-neglect and abuse policies, not targeting isolated events." *Emerald Oaks v. CMS*, DAB 1800 at 10, 2001 WL 1688390 (HHS 2001). "'[S]ufficient examples of neglect can

demonstrate lack of implementation of an anti-neglect policy.'" *Barn Hill Care Ctr. v. CMS*, DAB 1848 at 5, 2002 WL 31395322 (HHS 2002) (quoting *Emerald Oaks,* DAB 1800 at 10).

The ALJ reviewed what she described as a "somewhat meager set of written documents" submitted by the Cottage to demonstrate its compliance with § 483.13(c). R. Vol. II, tab CR 1629 at 7. Simply maintaining documents in a file, however, without also implementing the policies contained therein and regulating staff actions to assure compliance does not satisfy the regulation. *Emerald Oaks*, DAB No. 1800 at 10. Substantial evidence supports the ALJ's conclusion that "the absence of any facility investigation of these instances of neglect [of Resident # 7] establish[es] that the facility failed to implement its own policies to prevent neglect." R. Vol. II, tab 1629 at 10.

As for 42 C.F.R. § 483.10(b)(11), the notification-of-changes regulation, the Cottage completely failed to notify Resident #7's physician of her first seizure on January 2 and delayed notifying the physician of the second seizure for several hours after the onset of symptoms.

Under the quality-of-care regulation, 42 C.F.R. § 483.25, the Cottage was required to comply with Resident #7's plan of care. The goals in that plan included recognizing all signs and symptoms of a possible stroke and that she avoid complications from her hypertension, goals which involved careful monitoring and communication with the Resident's physician. It is clear from the

record that the monitoring and communication required by Resident #7's plan were not done and thus the Cottage failed to maintain the Resident's "practicable physical, mental, and psychosocial well-being." 42 C.F.R. § 483.25.

**Determination of immediate jeopardy.**

"Immediate jeopardy" is defined as "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident." 42 C.F.R. § 488.303. As noted above, the CMS found that, for the twenty-four hour period of January 12, 2006, the Cottage was in a situation of immediate jeopardy.

The Cottage argues that, because the CMS surveyors were not at the Cottage on January 12, 2006, and because no evidence establishes that Resident #7 had returned to the Cottage by that date, the finding of immediate jeopardy is not supported by substantial evidence. This argument misapprehends the scope of immediate jeopardy and the deficiency with which the Cottage was charged. As noted above, immediate jeopardy exists when a facility's noncompliance "has caused, *or is likely to cause*, serious injury, harm, impairment, or death to a resident." *Id.* (emphasis added). The fact that Resident #7 may not have been mistreated on January 12, 2006, is of no moment.

First, "[e]ven in the absence of actual harm, a widespread potential for more than minimal harm" is enough to support a finding of immediate jeopardy.

-9-

*Woodstock Care Ctr. v. Thompson*, 363 F.3d 583, 590 (6th Cir. 2003) (affirming imposition of eleven-day penalty running from March 4 through March 15 even though underlying incidents had largely occurred before the survey period of Feb. 27 thru March 4); *see also Barn Hill Care Ctr.*, DAB 1848 at 5-6 (holding that a single incident of neglect on a single day preceding a CMS survey can be the basis of a finding of immediate jeopardy).

Second, the Cottage was not charged with neglecting Resident #7 per se. It was charged with failure to "develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents." 42 C.F.R. § 483.13. We have held that sufficient evidence supported the Secretary's finding that the Cottage failed to comply with that regulation. The failure to implement clear, written policies concerning staff treatment of residents could certainly have caused Resident #7 to be mistreated, neglected, or abused and could also, sooner or later, cause mistreatment, neglect, or abuse of other residents. That is sufficient to sustain a finding of immediate jeopardy. *See Fairfax Nursing Home, Inc. v. United States Dept. of Health & Human Servs*, 300 F.3d 835, 838-39 (7th Cir. 2002) (affirming imposition of immediate jeopardy penalty for failure to "have in place a policy for monitoring its ventilator-dependent residents following an episode of respiratory distress" over a 105-day period even though no evidence showed actual harm on each of the 105 days).

**Assessment and calculation of civil money penalty.**

The Cottage challenges the CMP of $3,300 imposed for the period of immediate jeopardy and the $50 per day penalty from January 13, 2006, through February 13, 2006. The ALJ, after applying the factors listed in 42 C.F.R. § 488.438(f), found that the "relatively minimal CMP" for the immediate jeopardy was reasonable, and the Appellate Division affirmed.[3] We have held that the finding of immediate jeopardy was supported by substantial evidence. We similarly hold that the ALJ's finding and that of the Appellate Division affirming the imposition of the immediate jeopardy CMP was substantially supported.

As for the $50 per day penalty, the Cottage did not contest the imposition of deficiencies based on three other regulations dealing with comprehensive care plans, 42 C.F.R. §§ 483.20(d), 483.20(k)(1), and 483.20(k)(3)(ii), for the period January 12 through February 13, 2006. CMS thus had discretion to impose a CMP for these deficiencies as authorized in 42 C.F.R. § 488.406, the minimum of which must be at least $50 per day, *id.* at § 488.438(a)(1)(ii).

Our review of the record as a whole demonstrates that the Secretary's findings are supported by substantial evidence, are not arbitrary, capricious or an abuse of discretion, and are otherwise in accordance with the law. *See St. Anthony Hosp.*, 309 F.3d at 690-91.

---

[3]      The mandatory minimum CMP for immediate jeopardy situations is $3050. 42 C.F.R. § 488.438(a)(1)(i).

The decision of the secretary is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge