**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1603**

SUNBRIDGE CARE AND REHABILITATION FOR PEMBROKE,

Petitioner,

v.

MICHAEL O. LEAVITT, Secretary of the United States
Department of Health & Human Services; UNITED STATES
DEPARTMENT OF HEALTH & HUMAN SERVICES,

Respondents.

On Petition for Review of an Order of the United States
Department of Health & Human Services. (A-08-7)

Argued: March 26, 2009                    Decided: July 22, 2009

Before MOTZ and AGEE, Circuit Judges, and Thomas D. SCHROEDER,
United States District Judge for the Middle District of North
Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Joseph L. Bianculli, HEALTH CARE LAWYERS, PLC,
Arlington, Virginia, for Petitioner. Erica Cori Matos, UNITED
STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Atlanta, Georgia,
for Respondents. **ON BRIEF:** Peter D. Keisler, Assistant Attorney
General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.;
Thomas R. Barker, Acting General Counsel, Dana J. Petti, Chief
Counsel, Region IV, UNITED STATES DEPARTMENT OF HEALTH & HUMAN
SERVICES, Atlanta, Georgia, for Respondents.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

SunBridge Care and Rehabilitation – Pembroke ("SunBridge"), a skilled nursing facility that provides care to Medicare and Medicaid beneficiaries in North Carolina, appeals the final decision by the Secretary of the U.S. Department of Health and Human Services ("HHS") to assess civil monetary penalties for its failure to comply with certain federal health and safety regulations. An agency of HHS, the Centers for Medicare & Medicaid Services ("CMS"), made the initial determination of non-compliance and assessed the civil monetary penalties. These determinations were upheld by both an Administrative Law Judge ("ALJ") and the Departmental Appeals Board ("DAB"). For the reasons set forth below, we affirm.

I.

SunBridge is a skilled nursing facility located in Pembroke, North Carolina. Among the responsibilities SunBridge undertakes is to transport its wheelchair-bound residents to various medical appointments in a van owned and operated by the facility. The van is specially equipped, including with safety belts, to ensure that the residents remain in their wheelchairs while being transported.

On August 8, 2005, a Sunbridge van was transporting a resident ("Resident 1") when the driver made a sudden traffic

3

stop. Although the parties disagree as to what actually happened, Resident 1 either slipped out of his wheelchair or was thrown against the safety belt. He suffered minor injuries to his arm and shoulder. His wife, who was following the van in her car, claims that she saw "her husband going head first out of the wheelchair" and found him on the floor of the van with no safety belt on and with the wheelchair resting on top of him. (Admin. R. ("A.R.") 842.)

On March 3, 2006, another Sunbridge van driver noticed that an 84-year-old resident she was transporting ("Resident 3") had slid out of her wheelchair onto the van floor.[1] The driver stopped the van and attempted to return the resident to her wheelchair but, when unable to do so, called the Sunbridge nurse on duty. The on-duty nurse instructed the driver to leave Resident 3 on the van floor, place a pillow under her head, cover her with a blanket, and return to the facility – which the driver did. Resident 3 was transferred to the hospital by ambulance and, while being examined for a broken leg, died of an apparent cardiac event.

In May 2006, these accidents became the subject of an investigation when the North Carolina Department of Health and

---

[1] The administrative record also includes complaints involving Resident 2, which are not relevant to this appeal.

Human Services ("NC HHS") responded to a complaint about SunBridge. Through a contract with CMS, NC HHS investigated these two events as part of a survey of Sunbridge's compliance with federal health and safety regulations.[2] 42 U.S.C. § 1395aa; 42 C.F.R. § 488.10(a)(1). Under the applicable regulations, NC HHS must identify any deficiencies, determine their seriousness, and recommend a remedy to address them.[3] 42 C.F.R. §§ 488.404(b), 488.408.

Following the survey, NC HHS issued a Statement of Deficiencies in which it determined that SunBridge was not in substantial compliance with two health and safety regulations,

---

[2] As part of the Medicare and Medicaid programs, SunBridge must substantially comply with the health and safety requirements set forth in the Social Security Act and implementing regulations. 42 U.S.C. § 1395i-3(a)-(d); 42 C.F.R. §§ 483.1-483.75. To ensure that a facility fulfills those requirements, HHS conducts surveys on a regular basis, as well as in response to complaints about a facility. 42 U.S.C. § 1395i-3(g); 42 C.F.R. §§ 488.308, 488.332. Although CMS administers the Medicare and Medicaid programs, MacKenzie Med. Supply, Inc. v. Leavitt, 506 F.3d 341, 343 (4th Cir. 2007), HHS may contract with state entities to conduct a survey. 42 U.S.C. § 1395aa; 42 C.F.R. § 488.10(a)(1).

[3] The degree of seriousness ranges from deficiencies that result in "[n]o actual harm with a potential for minimal harm" to those that pose "[i]mmediate jeopardy to resident health or safety." 42 C.F.R. § 488.404(b)(1). A facility is deemed to be in substantial compliance with the health and safety regulations if its deficiencies "pose no greater risk to resident health or safety than the potential for causing minimal harm." 42 C.F.R. § 488.301. Potential remedies include a civil monetary penalty, which CMS may assess on a "per day" or "per instance" basis. 42 U.S.C. § 1395i-3(h)(2)(B)(ii); 42 C.F.R. §§ 488.430, 488.438(a).

5

one governing accident hazards, 42 C.F.R. § 483.25(h)(1), and one governing administration, 42 C.F.R. § 483.75. NC HHS found that Sunbridge's non-compliance posed "immediate jeopardy to resident health or safety" from March 6, 2006, to May 11, 2006, and less than immediate jeopardy from May 12, 2006, to June 19, 2006. Among other remedies, NC HHS recommended, and CMS ultimately assessed, civil monetary penalties against SunBridge of $4,000 per day for the period of immediate jeopardy and $50 per day for the period of non-immediate jeopardy, totaling approximately $270,000.

SunBridge requested a hearing on CMS's determination. 42 C.F.R. § 498.40. On June 5, 2007, an ALJ heard the matter and subsequently affirmed the determination. In sum, the ALJ held that (1) SunBridge failed to comply substantially with 42 C.F.R. § 483.25(h)(1) because it misused the van's safety belts while transporting residents in wheelchairs; (2) SunBridge failed to comply substantially with 42 C.F.R. § 483.75 because it did not adequately investigate the accidents or ensure that staff members followed the prescribed emergency procedures; (3) the finding of immediate jeopardy was not clearly erroneous; and (4) the amount of the civil monetary penalties was reasonable. On October 9, 2007, SunBridge appealed the ALJ's decision to the DAB, which affirmed for essentially the same reasons.

6

SunBridge timely petitioned this court for review.  For our purposes, the DAB's decision constitutes the final agency decision.  42 U.S.C. § 1320a-7a(e); 42 C.F.R. § 498.90(c)(1). We exercise jurisdiction pursuant to 42 U.S.C. §§ 1395i-3(h)(2)(B)(ii) and 1320a-7a(e).

II.

In the petition for review, SunBridge raises four issues:[4] (1) whether HHS has the authority to regulate motor vehicle travel; (2) whether HHS applied an improper burden-shifting framework that required the facility to demonstrate its compliance with the regulations by a preponderance of the evidence; (3) whether substantial evidence demonstrates that SunBridge was not in substantial compliance with the HHS regulations; and (4) whether the civil monetary penalties were upheld on grounds other than those identified by CMS.[5]

---

[4] Though SunBridge's briefing incorporated argument in its lengthy Statement of Facts, we address only those arguments contained in the argument section itself.  Fed. R. App. P. 28(a)(9)(A) (requiring the argument section of the opening brief to contain the "appellant's contentions and the reasons for them").

[5] In the final decision, the DAB also rejected SunBridge's argument that the determination of immediate jeopardy was clearly erroneous.  SunBridge waives this claim on appeal because it failed to raise the claim in its opening brief.  Fed. R. App. P. 28(a)(9)(A).  The argument was readily available at the time of briefing, United States v. Leeson, 453 F.3d 631, 638 (Continued)

7

A.

SunBridge argues that HHS lacks the authority to regulate motor vehicle travel. Although SunBridge correctly notes that the Social Security Act and 42 C.F.R. § 483.25 do not specifically mention motor vehicles, this court has recently held that HHS reasonably interpreted section 483.25(h)(1) to authorize the issuance of citations to skilled nursing facilities for violations arising from the use of motor vehicles. Liberty Nursing & Rehab. Ctr. – Mecklenburg County v. Leavitt, 294 F. App'x 803, 804 n.2 (4th Cir. 2008) (per curiam) (holding that this regulation should be "interpreted as broadly as is necessary to protect residents in all locations under the

n.4 (4th Cir. 2006), yet Sunbridge mentioned it only in the reply brief. United States *ex rel.* Vuyyuru v. Jadhav, 555 F.3d 337, 356 n.8 (4th Cir. 2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)). The Government's only mention of this issue consists of a two-page summary of the DAB's conclusions. Thus, the Government would be prejudiced by the consideration of this issue because it lacked an adequate opportunity to respond. Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) (holding that consideration of an issue first argued in the reply brief "would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised" (internal quotation marks and citation omitted)). Even if we deem SunBridge to have properly raised the immediate jeopardy argument, we note that this argument lacks merit. The determination of "immediate jeopardy" was not clearly erroneous because the record contains substantial evidence that SunBridge's noncompliance with the health and safety regulations "caused, or . . . [was] likely to cause, serious injury, harm, impairment, or death to a resident" under 42 C.F.R. § 488.301.

facility's control, including facility vehicles" and that "[i]t would be incongruous to hold that residents travel at their own risk when the facility to which they have entrusted their care transports them off-site"). We find that reasoning and conclusion equally applicable here.[6]

SunBridge argues that this interpretation deprived it of notice and due process. We disagree. SunBridge had sufficient notice because the statute and section 483.25(h)(1) are broad enough to encompass motor vehicle travel. Due process was afforded because Sunbridge participated in a hearing before the ALJ and an appeal before the DAB.

B.

SunBridge contends that HHS applied an improper burden-shifting framework that required the facility to demonstrate its compliance with the regulations by a preponderance of the evidence. SunBridge argues that this framework violates the Administrative Procedure Act ("APA"), which generally places the ultimate burden of proof on "the proponent of a rule or order." 5 U.S.C. § 556(d).

---

[6] We do not accord precedential value to our unpublished opinions, see Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006), and certainly not to those of other courts. In this case, involving an area of the law in which few courts have published opinions, we cite unreported opinions simply to demonstrate that other courts share our own views on the legal questions presented; we do not cite them as precedent.

A burden-shifting framework applies to cases involving alleged noncompliance with HHS regulations, Hillman Rehab. Ctr. v. Health Care Fin. Admin., DAB No. 1611, 1997 HHSDAB LEXIS 547, at *12-13 (1997), aff'd sub nom. Hillman Rehab. Ctr. v. U.S. Dep't of Health and Human Servs., No. 98-3789 (GEB), 1999 WL 34813783 (D.N.J. May 13, 1999), as well as to the assessment of civil monetary penalties. Cross Creek Health Care Ctr. v. Health Care Fin. Admin., DAB No. 1665, 1998 HHSDAB LEXIS 65, at *25-26 (1998). CMS initially bears the burden of making out a prima facie case that it has a legally sufficient basis for its action. Hillman, 1997 HHSDAB LEXIS 547, at *12. If CMS makes out a prima facie case, the burden shifts to the provider to "com[e] forward with evidence sufficient to establish the elements of any affirmative argument or defense." Id. at *13. The facility "bears the ultimate burden of persuasion[,]" proving "by a preponderance of the evidence on the record as a whole that it is in substantial compliance with the relevant statutory and regulatory provisions." Id.

Nevertheless, this burden-shifting framework operates only when the evidence stands in equipoise. Century Care of the Crystal Coast v. Leavitt, 281 F. App'x 180, 184 n.1 (4th Cir. 2008) (per curiam) (citing Fairfax Nursing Home, Inc. v. U.S. Dep't of Health & Human Servs., 300 F.3d 835, 840 n.4 (7th Cir. 2002)). In this case, as discussed below, the evidence is not

10

in equipoise because the record contains substantial evidence of SunBridge's noncompliance with the regulations. Consequently, the burden-shifting framework does not apply to these facts, and we need not address whether it violates the APA.

## C.

SunBridge next challenges the findings of fact underlying HHS's conclusion that Sunbridge was not in substantial compliance with the health and safety regulations. We accept as conclusive HHS's findings of fact "if supported by substantial evidence on the record considered as a whole." 42 U.S.C. § 1320a-7a(e). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## 1.

SunBridge contends that HHS failed to identify substantial evidence demonstrating a violation of 42 C.F.R. § 483.25(h)(1), which requires a facility to "ensure that . . . [t]he resident environment remains as free of accident hazards as is possible." We conclude that there is ample evidence that SunBridge was not in substantial compliance with this regulation because staff

11

members improperly fastened the safety belts of residents in wheelchairs.

First, the record shows that the safety belts worked properly when buckled to the floor *behind* the wheelchair. Several technical bulletins, photographs, and figures, including some submitted by SunBridge itself, indicate that the safety belts, which were attached to the van sidewall, should be strapped across the resident's lap and then buckled onto the floor behind the wheelchair. In this fashion, the belt secures both the wheelchair and the resident. A member of the NC HHS survey team also indicated, in both the Statement of Deficiencies and her testimony before the ALJ, that she watched a SunBridge staff member demonstrate how a resident could not slide out of a wheelchair if the safety belt was buckled behind the wheelchair. By contrast, the demonstration also showed that if the safety belt was buckled in front of the wheelchair, a resident could not be secured across the waist and therefore could slide out of the wheelchair. Furthermore, SunBridge produced no evidence that the safety belts worked properly when buckled in front of the wheelchair.

Second, substantial evidence shows that SunBridge staff members routinely buckled the safety harnesses *in front of* the wheelchair. The NC HHS surveyor indicated that she watched SunBridge perform a safety demonstration during which a driver

12

buckled the safety belt in front of the wheelchair. The surveyor also noted that a driver had admitted that safety harnesses could not be buckled behind the wheelchairs whenever at least four wheelchairs were in the van, which occurred at least three times per week. SunBridge also proffered no documentary evidence that staff members buckled safety belts behind wheelchairs or were trained specifically on the use of safety belts for wheelchair-bound residents.

Finally, Sunbridge argues that there is not substantial evidence that the harm to the residents was foreseeable. Me. Veterans' Home – Scarborough v. Ctrs. for Medicare Medicaid Servs., DAB No. 1975, 2005 HHSDAB LEXIS 54, at *11 (2005) (holding that the regulation regarding accidents applies only to those risks of harm that are forseeable). To determine whether a facility has complied with section 483.25(h)(1), a court may "evaluat[e] whether the facility has addressed foreseeable risks by identifying and removing hazards, where possible, or, where the hazard is unavoidable because of other resident needs, managing the hazard by reducing the risk of accident to the extent possible." Id. at *17-18.

Substantial evidence indicates that SunBridge failed to address the foreseeable risk that the misuse of the safety belts posed to residents in wheelchairs. SunBridge should have known to conduct an investigation into the use of the safety belts

because the wife of Resident 1 reported to SunBridge, via a social worker, that she had witnessed "her husband going head first out of the wheelchair" and had seen "the wheelchair on top of her husband, who didn't have a seat belt on." (A.R. 842.) SunBridge also should have known to engage in such an investigation after the accident involving Resident 3, who Sunbridge admits slid down in her wheelchair. SunBridge's claims that the DAB imposed "per se regulatory liability" or "strict liability" for the accidents are meritless. Substantial evidence shows that the risk was foreseeable because SunBridge could have identified it either through a routine demonstration of the safety belts or through adequate investigations into the accidents involving Residents 1 and 3.

2.

SunBridge argues that CMS offered no evidence to support a violation of 42 C.F.R. § 483.75, which requires a facility to "use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." "[A]n administrative deficiency is a derivative finding, based on the presence of other deficiencies." Century Care, 281 F. App'x at 186; accord Asbury Ctr. v. U.S. Dep't of Health & Human Servs., 77 F. App'x 853, 857 (6th Cir. 2003). In this case, as discussed above,

14

there is substantial evidence that SunBridge violated section 483.25(h)(1), governing accidents.

The record also contains substantial evidence that SunBridge was not in substantial compliance with section 483.75. In particular, SunBridge failed to adequately investigate the accidents involving Residents 1 and 3. Sunbridge's corporate manual directs supervisors to "immediately investigate the accident to determine the . . . cause" and to take steps "to eliminate that cause." (A.R. 449.) Although SunBridge investigated the accidents, it merely interviewed a few witnesses and examined whether the safety belts were in working order. These investigations were inadequate because they did not inquire whether staff members used the safety belts properly for wheelchair-bound residents and did not identify the cause of the accidents.

There is also substantial evidence that SunBridge failed to follow prescribed emergency procedures. SunBridge's corporate manual requires drivers to be trained "on how to report an accident and what to do at the scene." (A.R. 449.) This manual also prohibits drivers from moving injured persons "if likely to cause further injury." (A.R. 449.) Despite the manual's training requirements, the record indicates that some employees were ignorant of such emergency procedures. Furthermore, there is evidence that the driver and the on-duty nurse disregarded

15

those emergency procedures after the accident involving Resident 3. Contrary to the prohibition against moving injured persons, the driver attempted to return Resident 3 to her wheelchair. When this attempt proved unsuccessful, the driver called the on-duty nurse. The on-duty nurse, without having examined Resident 3 personally to determine the extent of her injuries, instructed the driver to leave the resident on the floor of the van, place a pillow under her head, cover her with a blanket, and return to the facility. Thus, we find there was substantial evidence to support a violation of 42 C.F.R. § 483.75.

## D.

Finally, SunBridge contends that HHS violated the APA and ignored relevant case law by upholding the assessment of the civil monetary penalties[7] on theories other than those identified in the Statement of Deficiencies or presented by CMS. We find this contention to be without merit.

SunBridge claims that it lacked timely notice of the alleged deficiencies, as mandated by the APA. The APA "requires procedural fairness in the administrative process." Rapp v. U.S. Dep't of Treasury, 52 F.3d 1510, 1519 (10th Cir. 1995). Section 554(b)(3) provides that "[p]ersons entitled to notice of

---

[7] SunBridge does not challenge the amount of the civil monetary penalties in this appeal.

an agency hearing shall be timely informed of . . . the matters of fact and law asserted." 5 U.S.C. § 554(b)(3); see Clearwater Finishing Co. v. NLRB, 670 F.2d 464, 468 (4th Cir. 1982). An agency contravenes this notice provision if it sustains a violation different from any that is clearly listed on the charging document. See, e.g., Bendix Corp. v. FTC, 450 F.2d 534, 542 (6th Cir. 1971) ("an administrative agency must give a clear statement of the theory on which a case will be tried"). Notice is sufficient as long as the party "is reasonably apprised of the issues in controversy[] and is not misled." St. Anthony Hosp. v. U.S. Dep't of Health and Human Servs., 309 F.3d 680, 708 (10th Cir. 2002) (internal quotation marks and citations omitted); accord Harman Mining Co. v. Layne, No. 97-1385, 1998 U.S. App. LEXIS 21109, at *23 (4th Cir. Aug. 27, 1998). To establish a violation of this provision, a party must demonstrate that it did not fully and fairly litigate the issue at the hearing and suffered prejudice from the allegedly insufficient notice. St. Anthony Hosp., 309 F.3d at 708; Yellow Freight Sys., Inc. v. Martin, 954 F.2d 353, 358 (6th Cir. 1992).

SunBridge claims that the ALJ overstepped his authority by introducing his own novel theory for the deficiencies in his decision, depriving it of the timely notice required by section

554(b)(3).[8]  SunBridge asserts that CMS based the deficiency finding on a failure to provide supplemental lap belts yet the ALJ upheld the civil monetary penalties based on the alleged misuse of the existing safety belts in the van.  As proof that CMS relied on the absence of supplemental lap belts for the deficiency finding, SunBridge claims that CMS accepted a compliance plan requiring the installation and use of supplemental lap belts.

We disagree with Sunbridge's characterization and find that the Statement of Deficiencies satisfies the notice provision of the APA.  The Statement of Deficiencies clearly indicates that SunBridge "failed to provide safe transportation for 2 of 2 residents" and would remain out of compliance with section 483.25(h)(1) until it implemented a method that would "safely secure residents for transportation."  (J.A. 6.)  Furthermore,

---

[8] In the Statement of Facts, SunBridge also claims that counsel for CMS introduced a novel theory for the administration deficiency at the hearing by alleging a deficiency based on the inadequacy of Sunbridge's emergency procedures.  SunBridge complains that this deficiency was not raised in either the Statement of Deficiencies or the prehearing pleadings and only arose in CMS's opening statement at the hearing.  Although SunBridge neglected to raise this particular claim in the argument section of the opening brief, we consider it because it relates to the notice issue.  Nevertheless, we reject this argument because the Statement of Deficiencies manifestly provides adequate notice inasmuch as it states that SunBridge's staff members were not properly trained "on procedures to follow at the time of an emergency."  (J.A. 25.)

18

the Statement of Deficiencies describes two specific incidents that involved wheelchair-bound residents who were not securely buckled into the SunBridge van and notes that staff members were uncertain of the proper method for buckling wheelchairs into the van. Contrary to SunBridge's claim, the Statement of Deficiencies never identifies the absence of supplemental lap belts as the basis of the deficiency. Thus, the Statement of Deficiencies provided SunBridge with adequate notice that improper use of the safety belts was the basis of the accident hazard deficiency.

## III.

For the foregoing reasons, the decision of the DAB is affirmed.

<u>AFFIRMED</u>

19