**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SUNSHINE HAVEN NURSING
OPERATIONS, LLC, d/b/a Sunshine
Haven Lordsburg,

     Petitioner,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
CENTERS FOR MEDICARE &
MEDICAID SERVICES,

     Respondent.

No. 12-9557

**ON PETITION FOR REVIEW FROM AN ORDER BY THE**
**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**(H.H.S. No. A-12-1)**

Submitted on the briefs:[*]

Jennifer L. Stone and Thomas A. Outler, of Rodey, Dickason, Sloan, Akin & Robb,
P.A., Albuquerque, New Mexico, for Petitioner.

William B. Schultz, General Counsel, Delores "Dee" Thompson, Chief Counsel,
Region VI, Nigel F. Gant, Assistant Regional Counsel, United States Department of
Health and Human Services, Dallas, Texas for Respondent.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

**MATHESON**, Circuit Judge.

Petitioner Sunshine Haven Nursing Operations LLC (Sunshine) operates a 67-bed nursing home in Lordsburg, New Mexico. It petitions for review of the United States Department of Health and Human Services (HHS) Departmental Appeals Board's (DAB) decision affirming an administrative law judge's (ALJ) decision upholding mandatory and discretionary "remedies" (penalties) imposed on Sunshine by the Centers for Medicare and Medicaid Services (CMS). CMS remedies are commonly characterized as imposed by the Secretary of HHS.

We have jurisdiction under 42 U.S.C. §§ 1395i-3(h)(2)(B)(ii) and 1320a-7a(e) over Sunshine's challenges to the Secretary's imposition of four fines, known as civil monetary penalties (CMPs), for four instances of noncompliance with federal regulations. We lack jurisdiction, however, over Sunshine's request to overturn the other remedies resulting from the Secretary's determinations that the Sunshine facility was not in substantial compliance with federal regulations. 42 U.S.C. §§ 1395cc(h)(1)(A) and 405(g) place jurisdiction for initial judicial review of such matters in the federal district court.

We affirm the four CMPs and transfer the other issues to the United States District Court for the District of New Mexico under the federal transfer statute, 28 U.S.C. § 1631.

## I. BACKGROUND

### A. *Legal Background*

"Established in 1965 under Title XVIII of the Social Security Act, . . . , Medicare is a federally funded health insurance program for the elderly and disabled." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994); *see generally* 42 U.S.C. §§ 1395 to 1395kkk-1. "The Secretary of Health and Human Services . . . is charged by Congress with administering the Medicare statute." *Almy v. Sebelius*, 679 F.3d 297, 299 (4th Cir. 2012) (citing 42 U.S.C. § 1395ff(a)(1)). The Secretary administers Medicare through CMS.[1] *Hughes v. McCarthy*, 734 F.3d 473, 475 (6th Cir. 2013). Medicare Part A, 42 U.S.C. §§ 1395c to 1395i-5, provides coverage to eligible persons for hospital services, including those provided by skilled nursing facilities (SNFs), such as Sunshine. *See* 42 U.S.C. §§ 1395c, 1395i-3.[2]

---

[1] "Until 2001, CMS was known as the Health Care Financing Administration or HCFA." *Ark. Dep't of HHS v. Ahlborn*, 547 U.S. 268, 275 n.3 (2006) (citing 66 Fed. Reg. 35437).

[2] Other parts of Medicare are not involved in this case. "Congress created Medicare Part B in 1965 to establish a supplemental medical insurance program for senior and disabled citizens." *Blue Cross Blue Shield of Mass. v. AstraZeneca Pharm. LP (In re Pharm. Indus. Average Wholesale Price Litig.)*, 582 F.3d 156, 163 (1st Cir. 2009) (citing 42 U.S.C. §§ 1365j to 1395w-4). Part B "provides reimbursement for physician services, outpatient hospital care and a range of other noninstitutional services, such as ambulance services, durable medical equipment,

(continued)

- 3 -

An SNF is eligible to enter into a "provider agreement" with CMS to participate in the Medicare program and receive reimbursements for providing covered services. *See id.* § 1395cc(a), (b). Federal law requires that "[a] skilled nursing facility must operate and provide services in compliance with all applicable Federal, State, and local laws and regulations . . . and with accepted professional standards and principles which apply to professionals providing services in such a facility." *Id.* § 1395i-3(d)(4)(A).[3] "Substantial compliance" is "a level of

_____

diagnostic laboratory tests and X-rays." *United States v. Rufai*, 732 F.3d 1175, 1179 (10th Cir. 2013) (internal quotation marks omitted). "In 1997, Congress enacted Medicare Part C, providing for private Medicare Advantage plans. . . . Part C allows eligible participants to opt out of traditional Medicare and instead obtain various benefits through [private insurers called Medicare Advantage organizations], which receive a fixed payment from the United States for each enrollee." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013) (citing 42 U.S.C. §§ 1395w–21 to w–28). "In 2006, Congress made available (under 'Part D' of the Medicare statute) the Medicare Prescription Drug Benefit to Medicare beneficiaries." *N.E. Med. Servs., Inc. v. Calif. Dep't of Health Care Servs.*, 712 F.3d 461, 464 (9th Cir. 2013).

[3] The Medicare and Medicaid statutes were comprehensively revised and strengthened by the Federal Nursing Home Reform Law, which Congress enacted as part of the Omnibus Budget Reconciliation Act (OBRA) of 1987. Pub. L. No. 100-203, §§ 4201–4206, 101 Stat. 1330 (codified as amended at 42 U.S.C. §§ 1395i–3). The Chair of the Senate Special Committee on Aging explained that "OBRA [1987] established . . . (1) requirements for those providers participating in the federal health programs, (2) survey and certification processes to evaluate compliance with the participation requirements, and (3) stricter sanctions and enforcement procedures to address noncompliance with these requirements." Sen. Charles Grassley, Essay, THE RESURRECTION OF NURSING HOME REFORM: A HISTORICAL ACCOUNT OF THE RECENT REVIVAL OF THE QUALITY OF CARE STANDARDS FOR LONG-TERM CARE FACILITIES ESTABLISHED IN THE OMNIBUS RECONCILIATION ACT OF 1987, 7 Elder L.J. 267, 267 (1999). Effective October 1, 1990, pursuant to the Reform Law, every nursing home resident covered by Medicare is entitled to "skilled nursing care," defined by statute as the level of care necessary

(continued)

compliance with the requirements of participation such that any identified deficiencies pose no greater risk to resident health or safety than the potential for causing minimal harm." 42 C.F.R. § 488.301 ¶ 19; *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7 (2000) (citing 42 U.S.C. § 1395i-3(h); 42 C.F.R. § 488.301). By contrast, "[n]oncompliance means any deficiency that causes a facility to not be in substantial compliance." 42 C.F.R. § 488.301 ¶ 11. A "deficiency" is a violation of a statutory or regulatory participation requirement. *Id.* ¶ 3.

CMS is charged with overseeing compliance with Medicare's conditions of participation. *See Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1153 (9th Cir. 2012); *Massachusetts v. Sebelius*, 638 F.3d 24, 30 (1st Cir. 2011) (citing 42 C.F.R. § 400.200 ¶ 2). Compliance is verified through unannounced inspections, called "surveys," conducted on behalf of CMS by state survey agencies (SAs). *See, e.g.*, 42 U.S.C. §§ 1395i-3(g)(2)(A), (g)(2)(E)(i), 1395aa(a). If a participating provider is found to be out of substantial compliance, the SA presents a "Statement of Deficiencies" (SOD) to the facility. 42 C.F.R. § 488.110(j), (k). To the extent CMS concurs with the identified deficiencies, CMS may, and sometimes must, impose remedies against the provider. *See Ill. Council*, 529 U.S. at 6 (citing 42 U.S.C. § 1395i-3). Remedies may include suspension of payment for new

to "attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." 42 U.S.C. § 1395i-3(b)(4)(A)(i). The regulations pertaining to SNFs became effective on July 1, 1995. 59 Fed. Reg. 56116.

- 5 -

services, 42 U.S.C. § 1395i-3(h)(2)(B)(i), fines (CMPs), *id.* § 1395i-3(h)(2)(B)(ii), termination of a facility's provider agreement, *id.* §§ 1395i-3(h)(2)(A)(i), (h)(4), 1395cc(b)(2)(A), and disapproval for two years of a facility's nurse aide training and competency evaluation program (NATCEP), *id.* § 1395i-3(f)(2)(B)(iii)(I).  If CMS imposes remedies, a provider may request a hearing before an ALJ and administrative review of the ALJ's decision by the DAB.  *See, e.g.*, 42 C.F.R. § 498.5(b), (c).

### B. *Compliance Enforcement Against Sunshine*

Sunshine contracted with CMS to provide Medicare services.  In 2008, CMS received a complaint from a family member of a resident that Sunshine was not bathing her often enough.  In response, CMS arranged for the New Mexico Department of Health, the SA for facilities in New Mexico, to conduct a survey of Sunshine.  The SA conducted surveys on November 5 and 19, 2008, and on January 21, February 3, February 5, and April 2, 2009.[4]  The SA found instances of noncompliance in each survey and concluded that Sunshine was not in substantial compliance with conditions of participation.

As a result of the SA's reports, CMS issued Sunshine a denial of payment for new admissions (DPNA) on February 5, 2009, based on a finding of three months'

---

[4] It is undisputed that a seventh survey conducted on April 20, 2009, is not relevant to this appeal because the DAB did not rely on any findings from that survey to support any of the remedies imposed.  *See Sunshine Haven Lordsburg*, DAB No. 2456, at HHS 4, 2012 WL 1909289 (DAB Apr. 23, 2012).

continuous noncompliance beginning on November 5, 2008. *See* 42 U.S.C. § 1395i-3(h)(2)(B)(i), (h)(2)(D). CMS also terminated Sunshine's Medicare provider agreement on May 6, 2009, based on a finding of six months' continuous noncompliance beginning on November 5, 2008. *See id.*, § 1395i-3(h)(2)(C). CMS also imposed four per-instance CMPs totaling $14,000, including two $5,000 CMPs from the February 5, 2009 survey, and two $2,000 CMPs from the April 2, 2009 survey. The four deficiencies were determined to "immediately jeopardize the health or safety of [Sunshine's] residents." *See id.* § 1395i-3(h)(1)(A), (2)(A)(i), (2)(B)(ii). CMS also withdrew its approval for Sunshine's NATCEP for two years based on the DPNA, the termination of its provider agreement, and/or a CMP of not less than $5,000. *See id.* § 1395i-3(f)(2)(B)(iii)(I).

Sunshine sought administrative review of CMS's actions. After receiving briefing on the issues and holding a hearing, the ALJ found that Sunshine was not in continuous substantial compliance with conditions of participation for the six months from November 5, 2008, until May 6, 2009. The ALJ concluded that the Medicare statutes required the issuance of the DPNA, the termination of Sunshine's provider agreement, and the disapproval of Sunshine's NATCEP. The ALJ also concluded that the four per-instance CMPs were supported and reasonable. Sunshine sought review by the DAB, which determined that the ALJ's findings were supported by substantial evidence. The DAB's decision is the final agency decision and is subject

- 7 -

to judicial review. 42 U.S.C. § 1395ff(f)(2)(A)(iv). Sunshine filed its petition for judicial review in this court.

## II. **JURISDICTION**

"Federal courts are 'courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201 (10th Cir. 2012) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). As an Article III court, we have authority to determine our subject matter jurisdiction under the statutes Congress has enacted. *Latu v. Ashcroft*, 375 F.3d 1012, 1017 (10th Cir. 2004).

Federal court jurisdiction under the Medicare program is complicated. Multiple statutes confer jurisdiction for judicial review of various Medicare determinations, including: 42 U.S.C. § 1320a-7a(e) (authorizing judicial review of CMPs imposed on an SNF due to noncompliance, on account of a cross-reference in § 1395i-3(h)(2)(B)(ii)(I)); § 1395cc(h)(1)(A) (authorizing judicial review "as is provided in section 405(g)" of determinations that a provider was not in substantial compliance); § 1395ff(b)(1)(A) (authorizing judicial review of Medicare Part A benefits determinations); and § 1395oo(f)(1) (authorizing judicial review of provider reimbursement decisions).

Sunshine originally asserted that we have jurisdiction under 42 U.S.C. §§ 1320a-7a(e) and 1395cc(h)(1)(A) over the issues presented in its petition for review. Pet'r's Opening Br. at 1. Because § 1395cc(h)(1)(A) authorizes initial judicial review of some of Sunshine's challenges only in the district court, whereas

- 8 -

§ 1320a-7a(e) and § 1395i-3(h)(2)(B)(ii) authorize initial judicial review of the CMPs in the circuit court, we requested supplemental briefing from the parties on our subject matter jurisdiction.

Both Sunshine and the government argue in their supplemental briefs that we have jurisdiction over all issues in the petition for review. After further consideration, however, we conclude that we have jurisdiction under § 1320a-7a(e) to decide Sunshine's challenges to the four per-instance CMPs, but we do not have jurisdiction over its challenges to the other remedies imposed on Sunshine. Those challenges should have been filed in a separate action in the district court under § 1395cc(h)(1)(A). The Supreme Court has noted that "[s]eparate statutes [from §§ 1395cc(h)(1)(A) and 405(g)] provide for . . . judicial review of civil monetary penalty assessments," citing the statutes which authorize review of CMPs in the circuit court, §§ 1395i-3(h)(2)(B)(ii) and 1320a-7a(e). *Ill. Council*, 529 U.S. at 8.

Before we explain these conclusions further below, we note the basic principle that "[w]hen interpreting the language of a statute, the starting point is always the language of the statute itself." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 710 (10th Cir. 2006) (internal quotation marks omitted). "If the language is clear and unambiguous, the plain meaning of the statute controls." *Id.* (internal quotation marks omitted).

A. *Jurisdiction Over the CMPs*

One of the statutory clauses in the section governing enforcement of the survey process as to SNFs is entitled "Authority with respect to civil money penalties." § 1395i-3(h)(2)(B)(ii). It authorizes the Secretary to "impose a civil money penalty in an amount not to exceed $10,000 for each day of noncompliance." *Id.* It also provides that "[t]he provisions of section 1320a-7a of this title (other than subsections (a) and (b)) *shall apply* to a civil money penalty under the previous sentence in the same manner as such provisions apply to a penalty or proceeding under section 1320a-7a(a) of this title." *Id.* (emphasis added).

Section 1320a-7a is entitled "Civil monetary penalties," and subsection (e) is entitled "Review by courts of appeals." Section 1320a-7a(e) provides, in part:

> Any person adversely affected by a determination of the Secretary under this section may obtain a review of such determination in the *United States Court of Appeals* for the circuit in which the person resides, or in which the claim was presented, by filing in such court (within sixty days following the date the person is notified of the Secretary's determination) a written petition requesting that the determination be modified or set aside. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Secretary, and thereupon the Secretary shall file in the [c]ourt the record in the proceeding as provided in section 2112 of Title 28. *Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined therein*, and shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, remanding for further consideration, or setting aside, in whole or in part, the determination of the Secretary and enforcing the same to the extent that such order is affirmed or modified.

42 U.S.C. § 1320a-7a(e) (footnote omitted) (emphasis added).

- 10 -

The plain language of the statute allows a circuit court to conduct initial judicial review of CMPs. The statute further provides that, "[u]pon the filing of the record with it, the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of Title 28." *Id.* Based on the foregoing, we have exclusive jurisdiction to review the imposition of the four per-instance CMPs on Sunshine.

## B. *No Jurisdiction Over Other Remedies Imposed on Sunshine*

Sunshine asserts § 1395cc(h)(1)(A) as the basis for our jurisdiction over the remaining issues—the non-CMP issues. Pet'r's Opening Br. at 1. Section 1395cc is entitled "Agreements with providers of services; enrollment processes," and subsection (h) is entitled "Dissatisfaction with determination of Secretary; appeal by institutions or agencies; single notice and hearing." Subparagraph (h)(1)(A) provides for judicial review of the Secretary's determinations as follows:

> Except as provided in paragraph (2), an institution or agency dissatisfied with a determination by the Secretary that it is not a provider of services or *with a determination described in subsection (b)(2) of this section* shall be entitled to a hearing thereon by the Secretary (after reasonable notice) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing *as is provided in section 405(g) of this title*, except that, in so applying such sections and in applying section 405(l) of this title thereto, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively.

42 U.S.C. § 1395cc(h)(1)(A) (emphasis added).  The cross-referenced subsection (b)(2) refers to the Secretary's determination "'that the provider fails to comply substantially with' statutes, agreements, or 'regulations.'" *Ill. Council*, 529 U.S. at 21 (emphasis omitted) (quoting § 1395cc(b)(2)(A)).  The cross-referenced statute, 42 U.S.C. § 405(g), provides for judicial review of the Secretary's determinations as follows:

> Any individual, after any final decision of the [Secretary of Health and Human Services] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary of Health and Human Services] may allow.  *Such action shall be brought in the district court* of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

42 U.S.C. § 405(g) (emphasis added).

Section 405(g) confers initial jurisdiction under § 1395cc(h)(1)(A) on the federal district courts for challenges to the Secretary's determinations of noncompliance.  *See Ill. Council*, 529 U.S. at 20-21.  Based on the plain language of these statutes, this court does not have original jurisdiction for judicial review.  It has *appellate* review of the district court's decision regarding challenges to the Secretary's determinations of noncompliance.  *See* § 405(g).

*   *   *

- 12 -

Sections 1395cc(h)(1)(A) and 405(g) together provide for initial district court jurisdiction over challenges to the Secretary's determinations of noncompliance. CMPs are based on certain types of noncompliance. Looking only at those statutes, it therefore seems that both the CMP and non-CMP issues in this case should have been brought initially in the district court. But § 1320a-7a(e) not only permits initial circuit court jurisdiction over CMP challenges, it makes that jurisdiction exclusive once the record is filed with the circuit court. Following the "elementary tenet of statutory construction that '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one,'" *United States v. Singleton*, 165 F.3d 1297, 1303, 1305 (10th Cir. 1999) (en banc) (Lucero, J., concurring) (alteration in original) (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375 (1990)) (further quotation omitted), this court has initial jurisdiction over the CMP challenges in this case, and the district court has initial jurisdiction over the other challenges.

C. *The Parties' Arguments for Jurisdiction Over All Issues*

Sunshine and the Government both contend this court has jurisdiction over all issues raised in Sunshine's petition. Despite the parties' desire for us to exercise jurisdiction over all of the issues, "'no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant.'" *Prier v. Steed*, 456 F.3d 1209, 1214 (10th Cir. 2006) (alteration omitted) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.

- 13 -

694, 702 (1982)).  "It is Congress that 'has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon federal jurisdiction . . . must be neither disregarded nor evaded.'"  *Castaneda v. INS*, 23 F.3d 1576, 1580 n.2 (10th Cir. 1994) (ellipsis in original) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)).  We address the parties arguments in turn.

1. **Broad Jurisdiction Under 42 C.F.R. § 498.90(a)(1)**

In its supplemental brief, Sunshine argues that § 1320a-7a(e) confers jurisdiction on this court over all of the issues in its petition for review because challenges to CMPs are involved and that jurisdiction lies in the district court under § 1395cc(h)(1)(A) only if there are *no* CMP issues.  *See* Pet'r's Supp. Br. at 7.  Sunshine relies on a regulation providing that "[t]he Board's decision is binding unless–(1) The affected party has a right to judicial review and timely files a civil action in a United States District Court or, in the case of a civil money penalty, in a United States Court of Appeals."  42 C.F.R. § 498.90(a)(1).  Similarly, the government also focuses on the word "or" in § 498.90(a)(1), arguing that "a civil action must be filed in only one forum."  Resp't's Supp. Br. at 5.  We reject these arguments.

The parties' interpretation of 42 C.F.R. § 498.90(a)(1) is strained.  The language reflects what the statutes provide:  out of all the remedies the Secretary may impose, Congress has specified that challenges to CMPs, not challenges to other

noncompliance remedies, may go directly to a circuit court under 42 U.S.C. § 1320a-7a(e).

2. **Cases from Other Circuits**

The parties point to cases in which other circuits exercised initial jurisdiction over challenges to multiple types of remedies, including CMPs, but those decisions merely cited § 1320a-7a(e) without explaining why that statute applied to all of the remedies under review and without even mentioning § 1395cc(h)(1)(A). *See Windsor Place v. U.S. Dep't of HHS*, 649 F.3d 293, 297 (5th Cir. 2011); *Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 842-43 (6th Cir. 2010); *Park Manor, Ltd. v. U.S. Dep't of HHS*, 495 F.3d 433, 435 (7th Cir. 2007).

We have found no decisions from this court or any other court addressing both 42 U.S.C. § 1320a-7a(e) and § 1395cc(h)(1)(A) when a CMP and other types of remedies were imposed against a Medicare provider based on a determination of noncompliance. We have exercised jurisdiction under § 1320a-7a(e) in three published opinions. *See St. Anthony Hosp. v. U.S. Dep't of HHS*, 309 F.3d 680, 690-91 (10th Cir. 2002); *S. Valley Health Care Ctr. v. Health Care Fin. Admin.*, 223 F.3d 1221, 1222 (10th Cir. 2000); *Bernstein v. Sullivan*, 914 F.2d 1395, 1397 (10th Cir. 1990). Each concerned only a challenge to a CMP. In addition, this court exercised jurisdiction under § 1320a-7a(e) in unpublished, nonprecedential decisions where an SNF challenged only a CMP. *See Cox Ret. Props., Inc. v. Johnson*, 323 F. App'x 668, 669 (10th Cir. 2009); *Sunset Manor, Inc. v. U.S. Dep't of HHS*, 315 F.

- 15 -

App'x 97, 98 (10th Cir. 2009).  None of these decisions examined the basis for this court's jurisdiction under § 1320a-7a(e), and no remedies were reviewed other than CMPs.

3. **Sunshine's Alternative Arguments**

Sunshine's alternative arguments that we should take jurisdiction over the non-CMP issues lack merit.

a. *Policy Arguments*

Sunshine first argues that we should read § 1320a-7a(e) broadly enough to encompass all of its issues based on policy considerations.  Policy considerations, however, are relevant only when a statute is ambiguous, *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013), and Sunshine has not shown or even argued that § 1320a-7a(e) is ambiguous.

b. *Absurdity Doctrine*

Sunshine next argues we should reject the plain meaning of § 1395cc(h)(1)(A) under the absurdity doctrine and take jurisdiction over all of its issues under § 1320a-7a(e).  It contends that Congress could not have intended to authorize the circuit court to have jurisdiction only over CMPs when non-CMP issues are involved in the same case.

We have said that "where applying the plain language [of a statute] 'would produce an absurd and unjust result which Congress could not have intended,' we need not apply the language in such a fashion."  *Robbins v. Chronister*, 402 F.3d

- 16 -

1047, 1050 (10th Cir. 2005) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 574 (1982)). "[T]his is because 'interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.'" *Id.* (quoting *Griffin*, 458 U.S. at 575).

Sunshine, however, has not shown the plain language of the statutes produces an absurd and unjust result, as opposed to a result it finds inconvenient. Nor has Sunshine discussed the legislative purpose of either § 1395cc(h)(1)(A) or § 1320a-7a(e), as extended to SNFs by 42 U.S.C. § 1395i-3(h)(2)(B)(ii)(I), or shown that its suggested alternative interpretation of § 1320a-7a(e) is consistent with that purpose. As a result, Sunshine's absurdity doctrine argument fails.

### c. *Pendent Appellate Jurisdiction*

Finally, Sunshine asks us to exercise pendent appellate jurisdiction over its challenges to the Secretary's non-CMP remedies, despite the plain language of § 1395cc(h)(1)(A) directing initial review of such issues to the district court.

Pendent appellate jurisdiction is a "narrow" concept that does not apply to this case. *See Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995) (discussing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995)). It can be considered only in conjunction with a nonfinal district court decision that is either immediately appealable as a collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), or is certified for interlocutory appeal by the district court under 28 U.S.C. § 1292. *See Swint*, 514 U.S. at 41-42, 45-47; *Roska ex*

- 17 -

*rel. Roska v. Sneddon*, 437 F.3d 964, 970 (10th Cir. 2006).  In those circumstances, "this court has discretion to exercise pendent appellate jurisdiction over nonappealable issues once we have asserted jurisdiction over other appealable issues in the same case."  *Roska*, 437 F.3d at 970.

Our exercise of pendent appellate jurisdiction "is generally disfavored" even if it "might still be appropriate where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary to ensure meaningful review' of the appealable one."  *Moore*, 57 F.3d at 929-30 (quoting *Swint*, 514 U.S. at 51).  Even then, "a pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal."  *Id.* at 930.

Sunshine relies on a single decision from this court where we noted that the Supreme Court had "suggested that pendent appellate jurisdiction might still be appropriate where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision.'"  *Moore*, 57 F.3d at 930 (quoting *Swint*, 514 U.S. at 50-51).  Sunshine overlooks that we exercised pendent appellate jurisdiction in *Moore* in an entirely different context from this case.  In *Moore*, we exercised appellate jurisdiction over an interlocutory appeal from the district court's summary judgment denying the defendant's assertion of qualified immunity.  *See id.* at 927, 928-29.  A co-defendant asked us to exercise pendent appellate jurisdiction over an

issue that was not eligible for interlocutory review under the collateral order doctrine. *See id.* at 929. We did so because "our disposition of [the proper interlocutory] appeal fully resolve[d] the issues presented in the [other defendant's] appeal." *Id.*

As noted above, we have initial jurisdiction under § 1320a-7a(e) over Sunshine's challenges to the CMPs because Sunshine filed its petition for review in this court. The district court has initial jurisdiction under § 1395cc(h)(1)(A) over Sunshine's challenges to the Secretary's non-CMP determinations of noncompliance, and we will have jurisdiction to review its decision if appeal is taken. The doctrine of pendent appellate jurisdiction does not permit us to disregard the role of the district court to decide the non-CMP issues in the first instance.

\* \* \*

We conclude the district court has initial jurisdiction for judicial review of the Secretary's determinations of noncompliance under § 1395cc(h)(1), and we have initial jurisdiction over challenges directed to the CMPs under §§ 1320a-7a(e). We proceed to the merits of the issues over which we have initial jurisdiction.

### III. **CIVIL MONETARY PENALTIES**

Sunshine challenges the four civil monetary penalties. CMS based the penalties on its determinations from the February 5 and April 2, 2009 surveys that the facility was not in substantial compliance with federal regulations and posed immediate jeopardy or actual harm to residents. CMS imposed two $5,000 fines based on the February 5 survey for deficiencies posing immediate jeopardy to residents. It imposed two $2,000 fines based on the April 2 survey for deficiencies

causing actual harm to a resident.  *See* 42 U.S.C. § 1395i-3(h)(2)(B)(ii)(I) ("[T]he Secretary may impose a civil money penalty in an amount not to exceed $10,000 for each day of noncompliance."); 42 C.F.R. § 488.430(a) ("CMS or the State may impose a civil money penalty . . . for each instance that a facility is not in substantial compliance, regardless of whether or not the deficiencies constitute immediate jeopardy."); 42 C.F.R. § 488.438(a)(2) ("When [civil money] penalties are imposed for an instance of noncompliance, the penalties will be in the range of $1,000–$10,000 per instance.").

### A.  *Standard of Review*

We have previously set out in detail the standard of review applicable to a civil monetary penalty imposed under the Medicare Act.  *See St. Anthony Hosp.*, 309 F.3d 686, 692 & n.7.  We stated that "[t]his court is not in the business of rubber-stamping agency action."  *Id.* at 690 (citing *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)).  "The applicable code provision, 42 U.S.C. § 1320a-7a(e), states that '[t]he findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.'"  *Id.* at 690-91 (quoting 42 U.S.C. § 1320a-7a(e)) (alteration in original).  "This standard requires meaningful scrutiny of the agency's findings.  Ultimately, we ask 'whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion.'"  *Id.* at 691 (quoting *Dickinson*, 527 U.S. at 162).  "The substantial evidence test has been equated to review for arbitrariness or caprice."  *Id.* (internal

quotation marks omitted). Agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency or . . . is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wyoming v. USDA*, 661 F.3d 1209, 1227 (10th Cir. 2011) (citation omitted) (internal quotation marks omitted).

It is not enough to affirm "when the reviewing court could find in the record evidence which, when viewed in isolation, substantiated the Board's findings." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 478 (1951) (examining same statutory "substantial evidence" language as in 42 U.S.C. § 1320a-7a(e)). Substantial evidence review requires us to "take into account whatever in the record fairly detracts from [the] weight" of the evidence upon which the agency relied. *Id.* at 488. We are not, however, allowed to "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Id.*

"Our review [of a CMP] is also governed by [the Administrative Procedure Act,] 5 U.S.C. § 706." *St. Anthony Hosp.*, 309 F.3d at 691. We have held that

> [u]nder § 706(2), we may set aside agency conclusions if they are
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]

(D) without observance of procedure required by law. . . .

*Id.* (alteration and ellipsis in original) (quoting § 706(2)(A)-(D)).

## B. *Review of the CMPs*

### 1. **February 5, 2009 Survey—Two Per-instance CMPs of $5,000**

Two deficiencies from the February 5, 2009 survey led to two $5,000 per-instance CMPs. The ALJ upheld the two deficiencies. *Sunshine Haven Lordsburg v. CMS*, ALJ No. CR2408, at HHS 33-34, 40, 2011 WL 3645721 (ALJ Aug. 5, 2011) (hereinafter "ALJ Dec."). The DAB agreed, noting that Sunshine disputed the ALJ's application of the law to the facts but did not dispute the facts underlying the CMPs. *Sunshine Haven Lordsburg*, DAB No. 2456, at HHS 24, 2012 WL 1909289 (DAB Apr. 23, 2012) (hereinafter "DAB Dec."). We briefly summarize the facts.

#### a. *Facts from the February 5, 2009 Survey*

On January 2, 2009, an elderly male resident designated R50 for purposes of this case assaulted his elderly girlfriend, R18, in her room, giving her a slight bloody nose. R50 lived across the hall from R18. Sunshine knew they considered each other boyfriend/girlfriend, but after this physical assault, Sunshine immediately took steps to investigate and rectify the situation. This included (but was not limited to) moving R18 to another room, attempting to transfer R50 immediately to another nursing

home, and revising R50's care plan to monitor his whereabouts until he could be transferred.

Two days later, on January 4, R50 was seen in the hall kissing and fondling the breast of another female resident, R6, who had low mental competency, was nonverbal, and was unable to consent to sexual activity. Sunshine concluded that R50's actions toward R6 constituted sexual abuse and again took immediate steps to investigate and rectify the situation. This included (but was not limited to) calling the police, who came to Sunshine and warned R50 that he could be arrested for felony assault and to leave the women alone. Sunshine also updated R50's care plan to specify 30-minute whereabouts checks.

Sunshine transferred R50 to another facility on February 5. Between January 4 and February 5, however, Sunshine saw R50 in the hall with R18 five times and the SA saw them together on two other occasions during a survey. On some of these occasions, R50 was holding R18's hand or kissing her. Each time Sunshine found the two residents together, it separated them. R50 never encountered R6 again, and there were no further incidents of actual abuse.

b. *Regulations Applicable to SNFs*

The regulations specify that each "resident has the right to be free from verbal, sexual, physical, and mental abuse." 42 C.F.R. § 483.13(b). SNFs "must—(i) Not use verbal, mental, sexual, or physical abuse." *Id.* § 483.13(c)(1)(i). SNFs "must develop and implement written policies and procedures that prohibit mistreatment,

- 23 -

neglect, and abuse of residents." *Id.* § 483.13(c). "Abuse means the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain or mental anguish." *Id.* § 488.301 ¶ 2. "Immediate jeopardy" exists if the nursing home's noncompliance "has caused or is likely to cause serious injury, harm, impairment or death to a resident." *Id.* § 488.301 ¶ 8. The scope and severity of the facility's noncompliance does not affect the range of per-instance CMPs ($1,000 to $10,000). *See id.* § 488.438(a).

SNFs must "take reasonable steps to prevent abusive acts, regardless of their source." *Pinehurst Healthcare & Rehab. Ctr. v. CMS*, DAB No. 2246, at HHS 5, 2009 WL 1455339 (DAB Apr. 30, 2009) (internal quotation marks omitted). And these steps must be effective. *Lake Mary Health Care v. CMS*, DAB No. 2081, foll. Analysis heading 4(B), 2007 WL 1560153 (DAB May 14, 2007). The Secretary has explained that Congress had a choice between "rule-based or outcome-based" evaluation of nursing home performance and "concluded that the outcome-based approach offers the better alternative to ensure quality care for nursing home residents." *Id.* "Thus, in the Omnibus Budget Reconciliation Act of 1987 . . ., Congress moved away from checklists of actions that facilities must take toward a central focus on the actual care received by patients, leaving facilities with flexibility to select the most appropriate methods *but the corresponding responsibility to ensure that the selected methods are effective for achieving the outcomes specified in the*

- 24 -

*statute and implementing regulations*." *Id.* (emphasis added) (citing, *inter alia*, 42 U.S.C. § 1395i-3).

Moreover, "[s]ubstantial compliance" is defined as "a level of compliance with the requirements of participation such that any identified deficiencies pose no greater *risk* to resident health and safety than the *potential* for causing minimal harm." 42 C.F.R. § 488.301 ¶ 19 (emphasis added); *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7 (2000) (citing 42 U.S.C. § 1395i-3(h); 42 C.F.R. § 488.301). Read in conjunction with 42 C.F.R. § 483.13(b), the plain language of the regulations requires SNFs to avoid the risk of or potential for abuse.

c. *CMS Determinations and ALJ/DAB Review*

CMS found that R50's assault on R18 constituted physical abuse in violation of 42 C.F.R. § 483.13(b) and (c)(1)(i). CMS further found that R50's actions toward R6 constituted sexual abuse in violation of the same regulations. *See also* SOM[5] App. Q, Part IV(A) (interpreting "[f]ailure to protect from abuse" to include "[n]onconsensual sexual interactions; e.g., . . . sexual assault"). CMS imposed two $5,000 fines (CMPs) because Sunshine: (1) "failed to follow its care plan to check Resident 50 every thirty minutes and to document those checks, and, as a result, [Sunshine] failed to protect its residents after physical or sexual abuse had occurred";

---

[5] The "SOM" is the State Operations Manual, CMS's manual interpreting the Medicare regulations. *See* http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS1201984.html.

and (2) "failed to develop and implement its policies and procedures to protect residents after incidents of physical and sexual abuse." ALJ Dec. at HHS 38 (citing CMS Ex. 29, at 1, 17-18, Admin. R. Vol. 7, at 2119, 2130-31).

The ALJ found that Sunshine's "interventions were ineffective to prevent Resident 50 from abusing Resident 6 and to prevent several subsequent instances of Resident 50 having contact with Resident 18." ALJ Dec. at HHS 39. The DAB upheld this finding. DAB Dec. at HHS 23, 25.

d. *Analysis of Sunshine's Challenge*

Sunshine argues the DAB improperly found that it failed to prevent the sexual abuse of R6 after the physical assault on R18. *See id.* at HHS 23. We recognize the ALJ and the DAB deviated from the reasons CMS gave for the fines. The latter did not include Sunshine's failure to *prevent* the abuse of R6. The CMS relied instead on Sunshine's actions—or inactions—*after* the R6 assault. *See* Admin. R. Vol. 7, at 2119, 2131. Nonetheless, we find no reversible error because the ALJ and DAB relied on those reasons as well.

Addressing Sunshine's alleged failure to monitor R50 after the two assaults he committed and failure to document the monitoring, the DAB stated that "Sunshine Haven nowhere disputes the ALJ's findings that it did not conduct the 'frequent' checks of Resident 50 required by his care plan on January 2, 2009 or the 30-minute checks required on January 4, 2009 . . . ." DAB Dec. at HHS 24. Sunshine has not identified evidence showing it actually conducted the checks required by its revised

care plans for R50 or that it even raised this factual issue before the DAB. Apart from whether Sunshine waived the monitoring issue, the undisputed evidence that R50 was repeatedly found with R18 after Sunshine revised R50's care plans supports the DAB's finding that Sunshine failed to implement its plans to monitor his whereabouts. Substantial evidence supports the resulting $5,000 CMP.

Substantial evidence also supported the DAB's conclusion that Sunshine failed to protect residents from abuse after R50's two assaults. The undisputed evidence that Sunshine repeatedly found R50 with R18 despite its plans to monitor his whereabouts supports the DAB's conclusion that Sunshine failed to protect R18 from the potential for abuse. *See* DAB at HHS 23, 25. Sunshine does not support its argument that R18 initiated some of these interactions. Even if she did initiate some of these encounters, Sunshine also fails to explain how it fulfilled its obligation to protect R18 from the potential for abuse by R50.

We conclude that substantial evidence supports the Secretary's findings of noncompliance underlying the two $5,000 CMPs arising from the February 5, 2009 survey. Because we affirm the two $5,000 fines, the Secretary's disapproval of Sunshine's nurse aide training and competency evaluation program (NATCEP) was proper because the disapproval of a facility's NATCEP is mandatory when a CMP is $5,000 or greater. 42 U.S.C. § 1395i-3(f)(2)(B)(iii)(I)(c).

2. **April 2, 2009 Survey—Two Per-instance CMPs of $2,000**

CMS imposed two $2,000 CMPs based on violations of 42 C.F.R. § 483.13(c) cited in the April 2, 2009 survey. DAB Dec. at HHS 26. Section 483.13(c) requires SNFs to "develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents" CMS determined that Sunshine failed "to respond properly" to ankle injuries that a 95-year-old resident, R4, reported on March 18, 2009. DAB Dec. at HHS 26. CMS found that Sunshine violated the regulation in two ways: (1) by failing to "assess the ankle until more than 35 hours later . . ., after the ankle injury was again noted on a second incident report"; and (2) by "conduct[ing] no investigation even after the second report, although its policy required that it investigate any possible unexplained injury." *Id.* at HHS 27 (internal quotation marks omitted).

Sunshine argued to the ALJ that the February 5, 2009 survey also cited a deficiency under § 483.13(c) and the deadline to correct that deficiency had not yet expired as of the April 2 survey. Accordingly, Sunshine contends, CMS should not have relied on the additional deficiencies cited under the same regulation in the April 2 survey to impose CMPs. The ALJ noted that Sunshine failed to cite any legal authority and rejected the argument because the deficiencies found in the February 5 and April 2 surveys were "based upon different facts." ALJ Dec. at HHS 42.

Sunshine argued to the DAB that imposing a CMP for a "virtually identical" deficiency under these circumstances would improperly punish the facility for the

- 28 -

same conduct it was in the process of correcting. DAB Dec. at HHS 28. Sunshine added that it was protected from the two $2,000 CMPs by a regulation governing the facility's quality assurance committee, which provides that "[g]ood faith attempts by the committee to identify and correct quality deficiencies will not be used as a basis for sanctions." 42 C.F.R. § 483.75(o)(4).

The DAB upheld the ALJ's conclusion that Sunshine failed to show the additional deficiencies cited under § 483.13(c) were an improper basis for the April 2 CMPs. It concluded the evidence showed that "the deficiencies cited during the February 5 and April 2, 2009 surveys involved different residents and different circumstances and occurred on different dates." DAB Dec. at HHS 28. The DAB added that the April 2 survey cited a failure to investigate, which was not included in the February 5 survey. *Id.* Finally, the DAB found that § 483.75(o)(4) was inapplicable because it was not designed "to insulate facilities that fail to properly care for residents during a period of correction from findings of noncompliance." DAB Dec. at HHS 28.

Sunshine argues again to this court that 42 C.F.R. § 483.75(o)(4) protects it from the two $2,000 CMPs. We agree with the DAB. The regulation requires SNFs to "maintain a quality assessment and assurance committee" that "[m]eets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary." 42 C.F.R. § 483.75(o)(1), (2)(i). The quality assurance committee must make "[g]ood faith attempts . . . *to identify* and correct quality

deficiencies." *Id.* § 483.75(o)(4) (emphasis added). But Sunshine's quality assurance committee did not identify the violations of § 483.13(c) cited in the February 5 or April 2 surveys—the SA performing the surveys did.

We agree with the DAB that "[t]he purpose of [§ 483.75(o)] is to encourage the kind of systemic actions that can improve quality of care, not to insulate facilities that fail to properly care for residents during a period of correction from findings of noncompliance." DAB Dec. at HHS 28. We therefore conclude that the findings and conclusion of noncompliance underlying the CMPs imposed based on the April 2, 2009 survey are supported by substantial evidence.

## C. *Sunshine's Burden of Proof Argument*

Both parties urge us to address Sunshine's two-page argument, *see* Aplt. Opening Br. at 58-60, that the DAB improperly shifted the burden of proof to Sunshine to show substantial compliance with conditions of participation instead of placing the burden on CMS to show that the facility was noncompliant. We agree this issue is sufficiently connected to the CMPs as to fall within our jurisdiction under 42 U.S.C. § 1320a-7a(e). We find the argument so superficially developed, however, as to be waived. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999).

The Federal Rules of Appellate Procedure require the argument section of an appellant's brief to "contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. 28(a)(8)(A). [W]e routinely have declined to consider arguments that

are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Sunshine asserts that the ALJ improperly shifted the burden of proof "on the basis of numerous DAB cases cited in [his] Decision," but Sunshine neither cites nor discusses any cases in its argument. Pet'r's Opening Br. at 58. Sunshine's cursory references to 5 U.S.C. § 556(d) and 42 C.F.R. § 488.301, *see* Pet'r's Opening Br. at 58, 60, are inadequate under Rule 28. We conclude Sunshine has waived its argument concerning the burden of proof.

## IV. **TRANSFER OTHER ISSUES TO DISTRICT COURT UNDER 28 U.S.C. § 1631 OR DISMISS THEM**

As discussed earlier, this case presents a jurisdiction problem. Sunshine wishes to challenge two sets of issues based on the Secretary's determinations of noncompliance between November 5, 2008, and May 6, 2009: (1) the CMPs (or fines) and (2) the penalties that are not CMPs. Under 42 U.S.C. §§ 1395i-3(h)(2)(B)(ii) and 1320a-7a(e), Sunshine may seek initial judicial review regarding the CMPs in this court. But, under 42 U.S.C. § 1395cc(h)1)(A), it may seek review of the non-CMP penalties only in the district court. We need not and do not decide whether Sunshine, had it started with the district court, could have obtained review of both sets of issues there. Instead, Sunshine petitioned this court as to both sets of issues, vesting us with exclusive jurisdiction over the CMPs. Lacking jurisdiction over the non-CMP issues, our options are: (1) dismiss the non-CMP issues for lack of jurisdiction, or (2) transfer the non-CMP issues to the district court pursuant to

- 31 -

28 U.S.C. § 1631. We choose option (2) because transfer rather than dismissal of the non-CMP issues serves "the interest of justice" under the transfer statute. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (quoting § 1631).

Congress has authorized courts of appeals and certain other courts to transfer cases to cure a want of jurisdiction:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Relevant to this appeal, "the word 'courts' includes the courts of appeals and district courts of the United States." *Id.* § 610.

Section 1631 "permits a court to transfer a case to a court that would have had jurisdiction on the date when the action was filed, where the transferring court lacks jurisdiction over the case in question, and where such a transfer would be in the interest of justice." *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162-63 (10th Cir. 2004). "Factors militating for a transfer include a finding that a new action filed by the litigant would be barred as untimely, and a finding that the original action was filed in good faith." *Coleman v. United States*, 106 F.3d 339, 341 (10th Cir. 1997) (per curiam) (quotation omitted).

Sunshine's case would be time-barred if filed in the district court now because an action seeking judicial review under 42 U.S.C. § 1395cc(h)(1)(A) of the Secretary's determinations of noncompliance must be filed within 60 days of the Secretary's final decision. 42 U.S.C. § 405(g). The case would have been timely, however, if it had been filed in the district court when Sunshine filed this petition for review. Moreover, the jurisdictional defect here is far from obvious. Three other circuits deem the Medicare Act "among the most completely impenetrable texts within human experience." *Rehab. Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994); *accord Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1150 (9th Cir. 2013); *Cooper Univ. Hosp. v. Sebelius*, 636 F.3d 44, 45 (3d Cir. 2010). We have no reason to question that Sunshine brought all of its issues in its petition for review to this court in good faith.

We have previously observed that the legislative history of § 1631 shows congressional intent to "aid litigants who were confused about the proper forum for review." *Coleman*, 106 F.3d at 341 (quotation omitted). The Supreme Court has noted that § 1631 "authoriz[es] transfer, *inter alia*, when review of agency action is sought in the wrong federal court." *Henderson v. United States*, 517 U.S. 654, 667 (1996). And "[i]n harmony with the intent of Congress, [§ 1631] has been broadly construed since its enactment." *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987). In light of the foregoing, we exercise our discretion to transfer to the district court the issues over which we lack jurisdiction.

## V.  **CONCLUSION**

We deny the petition regarding the four per-instance civil monetary penalties. We transfer the issues over which we lack jurisdiction under 42 U.S.C. § 1395cc(h)(1)(A), as explained above, to the United States District Court for the District of New Mexico.  We address CMS's November 7, 2012 consent motion to file the administrative record under seal in a separate order.